UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WISCONSIN

Thomas Zachary Peters
　　Plaintiff, in Pro SE

　　　　v.

Wesley Revels;
Christopher Weaver;
Stan Hendrickson;
Ryan Hallman;
Jeff Schwanz;
Dr. Jillian Bresnahan;
Dawn Kempen;
Sarah Malloy;
Sarah Doe (Last Name Unknown)

Civil Action No

23 CV 232 WMC

Complaint for
violation of
civil Rights

2023 APR 13 A 10:41
CLERK OF COURT
U.S. DISTRICT COURT
W.D. OF WI
FILED/REC'D



UNITED STATES DISTRICT COURT
FOR THE
Western DISTRICT OF WISCONSIN

Thomas Zachary Peters
  Plaintiff, in Pro se.

    v.

Wesley Revels;
Christopher weaver;
Stan Hendrickson;
Ryan Hallman;
Jeff Schwanz;
Dr. Jillian Bresnahan;
Dawn Kempen;
Sarah Malloy;
Sarah Doe (Last Name unknown)
  Defendant (s)

CIVIL ACTION NO.
23 CV 232 WMC

COMPLAINT FOR
VIOLATION OF
CIVIL RIGHTS

2023 APR 13 A 10:41
CLERK OF COURT
U.S. DISTRICT COURT
WI
FILED/REC'D

I.  The Parties to the Complaint.

  A.  The Plaintiff

    Thomas Zachary Peters
    c/o monroe County Jail
    112 S. Court St. Rm. 500
    Spara, WI 54656
    (monroe County)

  B.  The Defendant (s)

1 / 24

Defendant No. 1

Wesley D. Revels
Sheriff, monroe County
112 S. court St.   RN 500
Sparta, WI   54656
monroe county.
(608) -269 - 2117
Acting in both   Individual & official
capacity.

Defendant No. 2.

christopher weaver
chief Deputy, monroe County
112 S. court St.   RM 500
Sparta, WI   54656
monroe county
(608) 269 -2117

Acting in Both   Individual & official
capacity,

Defendant No. 3

Stan Hendrickson
captain, monroe county Jail
112 S. court St.   RM 500
Sparta, WI   54656
monroe County
(608) 269 - 8759

Acting in BOTH Individual & official
capacity.

2/24

Defendant No. 4

Ryan Hallman
Lieutenant, Monroe county Jail
112 S. Court St. Rm 500
Sparta, WI 54656
Monroe County
(608) 269-8759

Acting in BOTH Individual; official capacity.

Defendant No. 5

Jeff Schwanz
Sergeant, Monroe County Jail
112 S. Court St. Rm 500
Sparta, WI 54656
Monroe County
(608) 269-8759

Acting in BOTH Individual & official capacity.

Defendant No. 6

Dr. Jillian Bresnahan
Vice President, American Correctional
Healthcare, contracted Provider for
Monroe County Jail.
112 S. Court St. Rm 500
Sparta, WI 54656
Monroe County
(608) 269-1952

Acting in BOTH individual & official capacity.

3/24

Defendant No. 7

Dawn Kempen
NP, American correctional Healthcare
112 S. Court st. Rm. 500
Sparta, WI 54656
monroe county
(608) 269-1952
Acting in both individual and
official capacity.

Defendant No. 8

sarah malloy
Nurse, monroe county Jail
112 S. court st. RM 500
Sparta, WI 54656
monroe county
(608) 269-1952

Acting in both individual and official
capacity.

Defendant No. 9.

sarah Doe (Last Name unknown)
Nurse, American correctional Healthcare
112 S. court st. RM. 500
Sparta, WI 54656.
monroe county
(608) 269-1952

Acting in Both individual and
official capacity.

4/24

## II.    Basis for Jurisdiction

Pursuant to 42 U.S.C. § 1983, plaintiff brings suit against the aforementioned defendants - state or local officials - acting in both individual and official capacity having caused a deprivation of rights, privileges and/or immunities secured by the Constitution of the United States. Specifically, a violation of the <u>1st Amendment</u> right to petition the Government for a redress of grievances, the <u>8th Amendment</u> preventing cruel and unusual punishments, and the <u>14th Amendment</u> right to avoid deprivation of life, liberty, or property without due process of law. The <u>Prison Rape Elimination Act of 2003</u> was not enforced, and <u>42 usc §1320c-5(a)(2)</u> — the quality of professionally recognized standards were not met. 42 usc § 1981 aims to guarantee equal rights and §(c) protects against violations of complaints.

Each Defendant acted under color of state and/or local law as employees of monroe county Sheriff's office, monroe county Jail, or contracted

5/24

therein, and acting on the virtue of state law by exercising and subsequently abusing the power or authority derived from their individual and official capacities.

## III. STATEMENT of Claim

1. Inadequate Healthcare

on February 17th, 2022, the Plaintiff became incarcerated at the Monroe County Jail in Sparta, Wisconsin, awaiting trial in an unrelated criminal matter. In possession of the Plaintiff's medical prescriptions, prescribed by the Plaintiff's Primary Care Physician and urologist, Jail medical staff did knowingly alter active doses and prescriptions without consultation, supplementation, or review of the Patient's medical history and/or records. At the Patients initial two-week consultation, the Plaintiff expressed concerns over increasing symptoms of not having his bi-weekly hormone, testosterone, injection; Plaintiff, also, voiced concerns regarding a broken tooth, and other dental issues; back pain from a previous microdiscectomy at the L4-L5, S1-

6/24

S2 region, and issues with skin iritations on the lower extremities. The plaintiff was told that spinal injections were not allowed, nor was the more pressing matter of testosterone, and that dental applications were on hold.

over the next few months, the plaintiff continued to dispute the care received; The low testosterone - hypogonadism - for which the plaintiff has received hormone replacement therapy for since 2012 remained untreated. The symptoms led to an increase in weight, body fat, anxiety, stress, acne, reduced cognitive function, energy loss, bladder issues, and excessive bouts of sleepiness, almost resembling narcilepsy. This frequent napping was witnessed by staff and inmate alike, garnishing serious concern, but was still snubbed by medical staff and said to be unrelated to a hormone defiency. upon contact with my medical providers, separate from American Correctional Healthcare staff, I was told that any diagnosis without, first, reviewing my history, but, also, the science available through lab work : chemical analysis was not only

7/24

negligent, but, also, a violation of professionally recognized standards of care, a violation of medical ethics, and a prime example of deliberate indifference. "A difference in opinion is not uncommon, but dismissal without founding is reckless and unprofessional." - Dr. Zellmer. "The Plaintiff's condition continued to worsen - from the increased pain to the elevated blood pressure, yet an argument was presented that "at your age, low testosterone would only affect libido, and likely has nothing to do with your other symptoms.", Sarah Malloy. Despite requests for a second opinion, and to have labs drawn, no effort was made to resolve my issues. The care received had diminished greatly and a negative attitude from staff was perceived. After speaking with Nurse Sarah Mallow, Dawn Kempen, Lt. Hallman, and Capt. Hendrickson to no avail, complaints and grievances were filed and pushed further than before. A number of previous complaints were either lost, or simply ignored by staff, thus yielding no favorable results. These renewed efforts received more attention as copies were made prior to submission in order to document the inadequate

8/24

medical treatment. Finally, labs were drawn and proved the need for hormone replacement therapy, yielding a result of 171 ng/dL. Dawn Kempen, of American Correctional Healthcare (ACH), however, argued that such a result is absolutely normal for a 39 year old male. An article published in the January / February 2022 Men's Health (Source: The Journal of clinical Endocrinology and metabolism) show a comparable scale to what the Mayo Clinic revealed on my lab results - that a healthy range for males was

264 - 961 ng/DL
(53) the 50th percentile
for 19 - 39 year old males)  as

-and-

in it's introduction, equates a comparable score of 187 to being equivalent to that of an "80 year old man."

Despite contact from private physicians, family and friends - complaints and grievances - Dawn Kempen and the medical staff at the monroe county Jail have refused my testosterone, or any supplement that may influence it's natural growth. The treatment from staff continued to worsen,

9/24

even to the point of malpractice and negligence, when Nurse Sarah Doe, (Last name unknown) wrongfully misdistributed my medications to inmate Raymond Smith, and his medications to me. Despite pointing the issue out, I was told this did not occur; Both myself and the other inmate became ill, him requiring further attention, fought to see the video. at which point, the error was admitted to. To this day, the mistake is denied to me. by Administration, but was admitted by the Nurse as containing "nothing harmful". At various points, when dealing with medical, sgt. Jeff Schwanz would come over the radio instructing them not to give me anything; Sgt. Schwanz is subject to Part two of this complaint involving harassment and retaliation. medical staff, however, are obligated to provide care according to professionally recognized standards, not disgruntled employees operating outside their area of expertise.

In February of 2023, despite active grievances, the treatment of my low testosterone was still denied and, subsequently, while walking with another inmate, I briefly fell asleep and injured my knee. I notified staff, as well as the nurse during

10/24

medication pass but was told to fill out a "sick-call" Form. After repeated submissions, I was finally seen on march 1st, 2023 and subsequently taken to the hospital. There, I was told that a soft tissue injury was evident from the x-ray, but that additional imaging would be required once the swelling went down. crutches were recommended, as well a knee brace, icing, elevation and follow-up with orthopedic no more than 2-3 weeks out. After crutches were denied (an inmate w/ comparable classification- minimum - was provided a rollator), and icing was not available due to a faulty ice machine, known to have been damaged for months, and the swelling increased, I began to voice complaints. when seen by medical, I was told that stretching would remedy the issue. unable to walk, or even roll over in bed without escruciating pain, grievances were filed regarding the continued inadequate medical care and deliberate indifference. By definition, a medical need that is sufficiently serious either from diagnosis by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctors attention. To document such a need existed, requests were made to medical staff, as well as Lt. Ryan Hallman via Inmate Request, to have photos taken. This was denied, prompting a visit from a legal investigator who captured the

11/24

the extent of the injury via photo during a "professional visit". The next day, rather than reevaluating the injury, I was instead placed in segregation for "medical observation". Here, I was denied Request forms and Grievances, and cut-off from the outside contacts attempting to assist in obtaining care; Not once while in observation was my knee evaluated or inspected. Further, another inmate having suffered what may be perceived as a more serious injury involving stitches the head, a seizure and a concussion was not placed under observation making this feel very punitive. When inquiring, I was told by Sarah Doe that "maybe [I'd] reconsider filing so many grievances next time". On 3/22, when finally meeting with medical staff, I was told I was moved because I had not been resting the leg as required; I was returned to minimum housing where, like before I am in bed 18-23 hours a day due to pain. It should be noted that another nurse, "wendy", who was aware that I'd filed complaints warned that Nurse Sarah said she'd "get" whoever was making complaints about her; This was delivered as a friendly warning.

Despite requests for an outside opinion, the closest external review came from Dr. Jillian

12/24

Bresnahan, Vice-President of ACH, who felt Dawn Kempen, the provider representing her company at the monroe county Jail, was acting in accordance with ACH Policy, as well as with accepted standards of care. Soliciting this opinion was unnecessary as it was hardly objective. When a friend and power of Attorney for the Plaintiff called to speak with Administration, Capt. Hendrickson questioned where we had received the testosterone numbers, citing that my test results indicate a normal range; when he was told it was those <u>same</u> results that indicate "Low", he stated he would not comment as it was now in the sheriff's hands. When speaking to either the sheriff, or the Chief Deputy, after much attitude and alteroation with Bonnie Lawhorne, an 80 year old friend, the official said, " I don't know why you care so much - you do know what he's in there for, don't you?" thus proving discrimination, retaliation. and deliberate medical indifference depriving the plaintiff of constitutionally Protected rights

13/24.

and subjecting the patient to cruel and unusual Punishment that caused physical, emotional, and mental pain and suffering. Having exhausted all administrative remedy, the Plaintiff brings forth this 42 USC §1983 suit in hopes of correcting a grave injustice, preventing it from happening to others, and, of course, receiving the care required to maintain a healthy disposition,

2. Harassment, Retaliation and Violations of the Prison Rape Elimination Act of 2003.

on 7/24/2022, The Plaintiff returned to the unit following a "shakedown" to discover medical supplies had been ranged through, damaged and/or taken. unopened canteen items were, now, opened and removed from the original packaging, while adjacent bunks belonging to inmates Chris Lundahl and Dustin Sprague remained untouched. Sgt. Schwanz returned to inform me he was taking foot tubs and medical bandaging because I was hoarding supplies. medical had confirmed only days prior that these items were approved and noted in the system. Now, a day after filing a grievance because of Sgt. Schwanz's handling of a physical confrontation between

14/24

inmates Andrew Sherman and James Foster, suddenly medical agrees that these items are excessive and being hoarded. Additionally, a request for Administration to review Sgt. Schwanz's recent sexual misconducts seemingly provoked a negative response from staff; Hiding meatsticks beneath an inmates mattress, slapping him in the face with "wieners", and making endless inappropriate, sexually-offensive jokes and comments created a very hostile, negative environment. The harassment continued despite denial after denial! Finally, a meeting was had with Capt. Hendrickson who promised to handle the matter; As such, we agreed the matter was resolved. Several days later, however, Sgt. Schwanz and his staff only intensified their behaviors. "How many wieners can you fit in your mouth?" "How many balls can you fit in your mouth?" "I'd fuck a midget!" These comments continued, as did the harassment. Simple requests made by and approved for others were now denied for me; Further, punitive action was being taken in what can only be interpreted as retaliation.

15/24

Grievances followed, and additional PREA complaints were lodged, yet this disgusting behavior continued, and was justified by Lt. Hallman as being "locker room banter", to which I "need to grow some thicker skin." Based upon this attitude, I continued to request for outside agency involvement, but was ultimately denied. The sexual innuendo continued with comments made to others, but directed in a manner to provoke my attention. Worse, the bullying and harassment intensified, now enacted by Sgt. Schwanz's entire crew, who, also, made inappropriate sexually-motivated comments, almost as if attempting to entrap me by soliciting responses. In addition, I was the target of multiple searches and shakedowns, evident that few others, if anyone else was affected. Despite continued complaints and the request to be distanced from Sgt. Schwanz, the harassment continued, going so far as being removed from an inmate worker program for activity that was approved by a similar ranking staff member. This led to my housing being changed and myself placed in a sensitive needs unit for the first time since becoming incarcerated. To intensify matters, other inmates reported that inappropriate, suggestive comments were made by Sgt. Schwanz falsely implying that I was a "rat", as well as disclosing the nature of the charges for which I am falsely accused. This was denied by him, as well as Administration, though Capt. Hendrickson and Lt. Hallman did "return me" to the worker program, but did so without providing any written documentation or formal record. Several weeks later, I was instructed to pack up my belongings as I was being removed from the inmate worker program "per Lt. Hallman's orders". Again, later that night, I was instructed to pack up from Dorm 11; Apparently, another inmate had made threats against me and logically, in opposition of policy, I was moved. Several days later, when inquiring about all of this,

K 12.4

Lt. Hallman responded that I was removed from the worker program because I, along with another inmate, were unsentenced, tensions were high, and other inmates were eligible. As such, the same inmate who made threats to staff about me, also unsentenced, was chosen to replace me as an inmate worker. This, of course, was merely coincidence and not open to discussion, per Lt. Hallman. The harassment continued — while drawing photos, often taking requests from staff, I was singled out and told that I could NOT do so any longer — "Drawing staff is No longer allowed" said Capt. Hendrickson, upset by an image drawn of an officer wearing a diaper — a playful request teasing his young age, in response to his teasing of my "old" age. This was interpretted as a violation of my freedom of speech and/or press, but was, again, not up for discussion, in exchange for "allowing [me] to maintain my minimum status", overriding Sgt. Schwanz's instruction to "pack up". Several weeks later, inmate Jerren Springs was moved into the Dorm and moved above me; I introduced myself and welcomed him to the Dorm, answering questions regarding the demeanor, as well as "which bottom bunk would be opening soonest". An announcement summoned me to the intercom where Sgt. Schwanz scolded me for telling him where to go; I questioned this, as did inmate Skantlen who was also summoned. The situation esculated into a verbal argument and, again, I was instructed to pack up my belongings. I refused. Inmate springs requested to speak with an officer and clarified any confusion specifically stating that I was the only individual to welcome him to the Dorm. As such, I was permitted to stay, but my phone pin and email login were No longer valid; staff was notified and a grievance was filed. Administration alleged, first, this was policy — a lie — and, later, admitted it was done in error. In reality, I believe it was a targetted act of retaliation.

Despite the many complaints, Administration has allowed staff who have knowingly violated policy, as well as state and Federal statute to continue to operate under the color of law, violating civil rights and exposing inmates to deplorable living conditions and unethical, inhumane treatment. The suggestion of body cameras being utilized offers a viable solution to protect staff and inmate alike; the request to prevent Sgt. Schwanz from interacting with inmates until such utilization, however, has been denied. Additionally, no formal investigation or inquiry exists into this behavior, not by Sheriff Wesley Revels, Chief Deputy Christopher Weaver, Capt. Stan Hendrickson, Lt. Ryan Hallman, nor any other staff supervisory or not, at the Monroe County Sheriff's office or Jail. Anytime human element is applied lies potential for error; sadly, we live in an imperfect world as we are imperfect beings. But, our goal should be to utilize the ability to endlessly learn — to improve — particularly when sworn by oath to serve, protect and to advocate for justice. If not by our leaders, then by whom? Ignorance to these deprivations cannot be claimed, as through Discovery, evidence is readily available and proves that all parties were aware. From faulty, damaged equipment preventing adequate medical care, to unsanitary living conditions; From bullying and sexual harassment that is not only ignored, but almost encouraged, to the retaliation that exists thus causing mental and emotional anguish, Administration is well-aware and was provided ample opportunity to resolve these matters diplomatically, but opted not to. Aside from exhausting all administrative remedies, the state Inspector, Nathan White was contacted and asked to intervene; This was unsuccessful! As such, my time here while awaiting trial has been beyond mere discomfort — almost torture. Physically despite having always been active and healthy, I am decaying from the deliberate indifference; Emotionally even mentally, I am eroding and but a mere shell of the man I entered as. From the top down, excuses are made and efforts displaced to silence these complaints, not correct the

18/24

behaviors causing them. As such, inmates are subjected to cruel and unusual punishment, exposed to inhumane treatment, and deprivations protected by the US. Constitution, and, then, retaliated against for seeking remedy.

## IV.    Injuries

IN response to over fourteen (14) months of deliberately indifferent medical care, the Plaintiff's back injury which was successfully managed prior to incarceration, has reached a new level of pain, discomfort, and limitations of movement. An injury once isolated, now, spreads both ways vertically affecting use of upper and lower extremeties, as well as quality of life. Aside from an additional mattress, all else including a Tens unit, spinal injections, a lumbar wedge, and additional medication have all been denied.

The lack of testosterone has created an increase in weight, body fat, development of breasts, energy, mood, stress, depression, activity and relationships. The denial has not only led to issues pertaining to identity, but physically an increase in blood pressure, and other injuries resulting from falling asleep, including soft tissue damage in the left knee requiring follow-up and additional imaging, but has been denied. The emotional question exists from ACH's denial of hormone replacement therapy, "why is it so acceptable

19/24

for some state and federal institutions to cover hormone replacement therapy for gender-challenged or gender-transitioning individuals to alter a God-given sex, but not for myself to remain my god-given gender?" what, then is so permissable about Steve becoming Eve, or vice versa, but not Thomas remaining Thomas? This very question has caused emotional and psychological damage beyond measure. This has affected me socially and permanently damaged several significant relationships including my marriage and, subsequently, my relationship with my minor children. The knee injury suffered will likely have a permanent affect on my range of motion, ability to run, and/or to participate in sports; Left uncorrected, pivoting is likely out of the question, as is bending the knee in certain positions. The level of pain is escruciating - nearly unbearable, forcing me to remain in bed in excess of 18 - 23 hours per day, adding to the mental and emotional anguish of this predicament.

In response to the lack of dental, I am constantly in pain and fear a worsened infection. And, in response to the discrimination, retaliation and sexual harassment, I have suffered emotionally, psychologically, socially, and even physically, as a heightened fear exists and a distrust of staff more prevalent than ever before. This causes a state of constant paranoia and fear of being "setup" by staff. Requests for counseling through a third party have been denied leaving me to cope with these traumas alone, beyond mere discomfort. The misdistribution of medication, also, had a lasting affect on my mood and demeanor, subsequently affecting relationships and leading to the dissolution of my marriage; An immense distrust of medical staff, jail staff, and even females resulted from this encounter...

21 of 24

Every injury described here was easily avoidable, or subsequently treatable with adequate medical care. In addition to having provided proper notice, and applying the required threshold of preventive care, the number of calls from family and friends, as well as grievances filed eliminates any rebuttal of not knowing and instead proves a deliberate act of refusing treatment either for personal reasons, or as a matter of professional incompetence. The mere fact that records were available showing a previous diagnosis and treatment plan from external physicians, both of whom attempted to contact the facility on my behalf, argues a disposition of not wanting to treat inmates, but instead to "band-aid" issues until the matter is dropped or until they become someone else's issue. This practice, indirectly admitted to by nurse Sarah Malloy, only amplifies matters and leads to a worsened state. "The problem with your knee, for example, is that only an x-ray was done which revealed a soft tissue injury; That could be anything from fluid to a tear, fatty tissue to cartilage. Sadly, you're here and that makes it difficult to one get the testing needed, but, also, to follow up with recommendations due to facility restrictions,"

would ice or a cold compress have made a difference? surely, it wouldn't have hurt as the swelling continues, likely indicative of a more serious injury or condition. Now, because of the lack of care, it is reasonable to assume a more rigorous treatment plan is required, hopefully without permanent affects from delayed care. The same can be argued of the tooth which was, initially, a simple extraction but now will require surgical removal of two (2) teeth; In the meantime, it is difficult to chew, even swallow without intense oral pain. The back is, also, the same — Now, likely requiring further surgical repair and remedy. Aside from the pain experienced from this willful neglect, the process of repairing the matters will likely impact the quality of life drastically; once released, I will be subjected to analysis, therapy, possibly even surgery, This will require limitations with movement, impacting my ability to play with and provide for my toddler children; Likely, also, leading to potentially lost wages and incurred expense now without medical insurance. This, in and of itself, is a debilitating injury that affects my quality of life, all willfully caused by a deprivation of my constitutional rights by the very People sworn to defend them.

From mental, emotional, physical, social and even spiritual well-being; the deliberate indifference has caused irreparable harm and even resulted in a lost marriage. Trauma is said to have the ability to reshape a person; I am a mere fraction of who I was! Deliberate indifference is beginning to feel more like intentional homicide!

22/24

## V. Relief

Plaintiff seeks Injunctive Relief ordering Sgt. Jeff Schwanz be barred from having any direct contact with an inmate until further training is received and a formal apology is issued to the Plaintiff; Additionally, that all staff interacting with inmates wear body cameras to document all physical and verbal encounters.

Plaintiff seeks Injunctive Relief ordering that All staff, including Administration, participate in formal training annually, including sensitivity education that emphasizes "innocent until proven guilty", and the importance of our constitution.

Plaintiff seeks, from each defendant $300,000 in compensatory damages for pain and suffering, and loss of companionship, anticipated recovery time, as well as lost wages upon release, $550,000 in punitive damages from each defendant, and all legal / medical fees and costs related to this action.

Plaintiff seeks order appointing counsel, as needed, to assist with the complexities of this case and Defendants history of limiting Plaintiffs access

23/24

to resources beyond his incarceration. Attempts were made to obtain counsel, but unsuccessful.

## VI. Certification and closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the clerk's office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the clerk's office may result in the dismissal of my case.

Date: April 1, 2023

Thomas Z Peters.

Enclosure:
. Application to proceed without prepaying fees or costs
. Declaration of attempt to obtain counsel
. Addendum

24/24