IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS ZACHARY PETERS,

                Plaintiff,              OPINION AND ORDER

    v.

                                          23-cv-232-wmc

CAPT. STAN HENDRICKSON,
LT. RYAN HALLMAN, and
SGT. JEFF SCHWANZ,

                Defendants.

---

      Plaintiff Thomas Zachary Peters filed a complaint under 42 U.S.C. § 1983 as a state prisoner representing himself, claiming that Monroe County Jail Officers Jeff Schwanz, Ryan Hallman, and Stan Hendrickson violated his civil rights. (Dkt. #26.) The court granted Peters leave to proceed with Fourteenth Amendment due process claims against: (1) defendant Schwanz for subjecting him to verbal harassment; and (2) defendants Hendrickson and Hallman for their refusal to address Schwanz's harassing behavior. (Dkt. #27.) The court also granted Peters leave to proceed with a First Amendment retaliation claim against Schwanz for allegedly targeting Peters after he filed grievances against him. (*Id.*)

      The parties have since cross-moved for summary judgment on all of these claims. (Dkt. #54 and Dkt. #65.) For the reasons explained below, the court will deny plaintiff's motion, deny defendants' motion as to plaintiff's Fourteenth Amendment claims, and grant defendants' motion as to his First Amendment claim.

UNDISPUTED FACTS[1]

### A. Parties

Plaintiff Thomas Zachary Peters was a detainee at the Monroe County Jail from February 17, 2022, to August 2, 2024.  (Peters Decl. (dkt. #57) ¶ 1.)  Until he retired in April 2023, Sergeant Jeff Schwanz also worked at the Jail. (Schwanz Decl. (dkt. #75) ¶ 1.)  Captain Stan Hendrickson and Lieutenant Ryan Hallman are the Monroe County Jail Administrator and Assistant Jail Administrator, respectively.  (Hendrickson Decl. (dkt. #73.) ¶ 1; Hallman Decl. (dkt. #74) ¶ 1.)

### B. Harassment

From Peters' arrival at the Jail in February of 2022 until Sergeant Schwanz's departure from the Jail, Peters avers that Schwanz routinely called him derogatory, homophobic names, including "faggot," "homo," "bitch," "sissy," and "fairy." (Peters Decl. (dkt. #57) ¶ 4; McCurdy Decl. (dkt. #58) ¶ 3.)  Peters further avers that Schwanz would routinely suggest he was homosexual in front of other inmates by using similar language, as well as discuss the nature of the pending criminal charges against Peters.  (Peters Decl. (dkt. #57) ¶ 13; Peters Dep. (dkt. #64) 51.)  Other inmates in Monroe County Jail at that time also attest to hearing the same or similar comments by Schwanz.  (McCurdy Decl. (dkt. #58) ¶ 3; Jewell Decl. (dkt. #108) ¶¶ 6, 8.)  According to Peters, Schwanz would further describe other inmates with whom he was friends as his "gay lovers," and make references to the number of "balls" and "wieners" Peters could fit in his mouth.  (Peters

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed.

2

Decl. (dkt. #57) ¶¶ 7, 13.)  On October 29, 2022, Peters filed a formal complaint with the Jail in which he accused Schwanz of saying said that he and another inmate were "lovers" and that he was a "faggot."  (Dkt. #57-1, at 30-31.)  He also reported that this incident occurred in front of other inmates.  (*Id*.)

As a result of Schwanz's harassment, Peters feared that other inmates would physically assault him because he was perceived as homosexual.  (Peters Dep. (dkt. #64) 24; Dkt. #57-1, at 31.)  Indeed, he testified that other inmates threatened to assault him once Schwanz started calling him homosexual.  (Peters Dep. (dkt. #64) 30; Dkt. #57-1, at 31.)  In one instance, Peters even requested a "no-contact order" against another inmate who had threatened sexual assault; although after a request for more information, Lieutenant Hallman avers that Peters did not follow up, which is why the order was not granted.  (Peters Dep. (dkt. #64) 18-19; Hallman Decl. (dkt. #66) ¶ 29.)  On another occasion, Peters further testified that he was briefly, physically assaulted by a different inmate who prefaced his attack by saying, "I am going to give it to you, you fucking faggot." (Peters Dep. (dkt. #64) 31.)  However, Peters never reported this assault, nor did he indicate the assault resulted in any injury or whether he even sought even treatment for it. (Peters Dep. (dkt. #64) 26, 31-32.)

Nevertheless, on March 12, 2022, Peters did file a PREA complaint against Schwanz for verbal sexual harassment in front of other inmates, who then started commenting on his sexuality, causing him to fear for his safety and to ask to be moved.  (Dkt. #57-1, at 1-2.)  On May 8, 2022, Peters filed an additional PREA complaint that Schwanz threatened to throw his "fag ass in seg" and that other inmates continued to threaten him after

3

Schwanz said he was homosexual and shared the nature of Peters' pending child sexual assault-related charges in Monroe County. (Dkt. #57-1, at 5.)

Peters further alleges that Lieutenant Hallman responded to his PREA complaints by telling him to have "thicker skin." (Peters Decl. (dkt. #57) ¶ 10.) Peters also alleges that Captain Hendrickson followed up on his PREA grievances against Schwanz with a verbal meeting on August 31, 2022, indicating that he and Hallman would talk to Schwanz. (Peters Decl. (dkt. #57) ¶ 10; Dkt. #57-2, at 30.) At the meeting, however, Hendrickson claims Peters told him that "the issues had been resolved, and no further action was required," and thus, they both considered the appeal resolved. (Dkt. #57-2, at 30-31; dkt. #73, at ¶ 5.)

Following this August conversation, Peters filed yet another PREA complaint on September 9, 2022, stating that Schwanz's "sexual harassment and retaliation continues" and asking both Hallman and Hendrickson to "please help" because he "can't handle this" and he didn't consider his previous appeal resolved. (Dkt. #57-1, at 18.) Peters also requested to see a sexual harassment counselor, after which he was eventually seen by Vicki Riley, the Jail's contracted counselor. (Peters Dep. (dkt. #64) 130.)

Peters testified that he had suicidal thoughts as a result of Sergeant Schwanz's harassment and ensuing threats from other inmates, as well as depression, panic attacks, nausea, vomiting, and insomnia, although he does not indicate reporting these such issues to medical staff. (Peters Dep. (dkt. #64) 131; Peters Decl. (dkt. #57) ¶ 7.) Finally, Peters filed another grievance against Schwanz on October 22, 2022, for continuing to harass him in front of other inmates. (Dkt. #57-1, at 30-31.)

For his part, Schwanz contends that he neither made any derogatory comments to or about Peters, nor retaliated in any way against Peters for filing a complaint against him. (Schwanz Decl. (dkt. #75) ¶¶ 3-6.) Hallman and Hendrickson also deny telling Peters to have "thicker skin," and further deny having minimized or failed to address any of his grievances. (Hallman Decl. (dkt. #74) ¶ 4; Hendrickson Decl. (dkt. #73) ¶¶ 3-4.) Likewise, Hallman and Hendrickson aver that they neither took part in any retaliation nor enabled such efforts. (Hallman Decl. (dkt. #74) ¶¶ 5-11; Hendrickson Decl. (dkt. #73) ¶¶ 6-7.)

### C. Peters' Disciplinary History

Peters further maintains that Sergeant Schwanz retaliated against him directly and through other personnel after his filing of the PREA complaints by: (1) preventing him from accessing medical care after an injury; (2) confiscating his medications; and (3) putting him in medical segregation. (Peters Dep. (dkt. #64) 86-88; 91-94.) Peters also maintains that Schwanz undertook a variety of other retaliatory actions through formal disciplinary proceedings against Peters following his PREA complaints, again on his own and through other personnel, including: (1) specifically targeting Peters for bunk searches; (2) confiscating various items from his bunk; (3) denying him access to additional grievance forms; (4) changing his PIN number that enabled him to make phone calls out of the Jail; (5) wrongfully terminating him from his inmate worker position; and (6) moving him to disciplinary segregation. (Peters Dep. (dkt. #64) 63-65, 71; Dkt. #57-1, at 3, 29, 31.)

As security officers, Schwanz, Hallman, and Hendrickson were responsible for implementing Jail policy during day-to-day operations, but they did not set such policy.

(Hallman Decl. (dkt. #74) ¶¶ 12-13; Hendrickson Decl. (dkt. #73) ¶¶ 8-9.) Security officers operated separately from medical staff — medical staff were employed by Advanced Correctional Health ("ACH") under a contract with the Jail. (Hallman Decl. (dkt. #74) ¶ 6; Dkt. #57-2, at 4, 39.) Medical staff determined inmates' care plan and what medical supplies they could use. (Hallman Decl. (dkt. #74) ¶¶ 21-23; Dkt. #57-2, at 39; Dkt. #66-3, at 6.) Likewise, medical staff determined whether inmates should be placed in medical segregation and observation, and whether and to what degree inmates could keep medications and personal medical items in their bunk areas. (Hallman Decl. (dkt. #74) ¶¶ 21-23; Dkt. #57-1, at 13; Dkt. #57-2, at 42.)

At all relevant times, the Jail's policy was to conduct random routine inspections of inmates' bunk areas once per month, with the date determined at the beginning of the month. (Hallman Decl. (dkt. #66) ¶ 11.) In addition to scheduled searches, Jail policy stated that inmates' bunk areas and personal property were subject to search at any time. (Dkt. #66-3, at 5.) Moreover, for security purposes, inmates could not collect an excess of papers, medications, or other permitted personal items in their bunk areas, and excess items could be confiscated. (Hallman Decl. (dkt. #66) ¶ 13; Dkt. #66-3, at 6-8.) Additionally, inmates were required to speak respectfully to security and medical personnel. (Dkt. #66-3, at 8.) Inmates who violated any of these policies were subject to discipline, including segregation. (Dkt. #66-3, at 10-11.)

Correctional officers officially disciplined Peters for violating Jail policies in 16 instances over the course of his confinement at the Monroe County Jail. (Hallman Decl. (dkt. #66) ¶¶ 9-10.) Of those instances, Sergeant Schwanz was directly involved in only

6

one incident on February 4, 2023, during which Peters was removed from the dorms for disrespecting an officer after calling Schwanz an "idiot," among other statements. (Hallman Decl. (dkt. #66) ¶ 26; Dkt. #57-2, at 30.) As a result, Jail staff planned to move Peters to another housing assignment, and they changed his phone PIN. (Hallman Decl. (dkt. #66) ¶ 26; Dkt. #57-2, at 30.) Upon review, however, Captain Hendrickson decided that a move was unnecessary, and the PIN was then changed back. Schwanz was not directly involved in any other instance of discipline of Peters; indeed, most discipline occurred after he retired. (Hallman Decl. (dkt. #66) ¶¶ 6-28.)

Inmates could file a grievance to contest the basis for discipline or to otherwise aggrieve conditions of confinement in the Jail. (Hallman Decl. (dkt. #66) ¶ 4.) Before February 2024, inmates could file a grievance using standard forms or other papers. (Hallman Decl. (dkt. #66) ¶ 4.) Typically, jail staff carried those forms on their person and routinely made them available during daily walk-throughs of the dorm areas. (Hallman Decl. (dkt. #66) ¶ 4; Dkt. #57-2, at 33.) After February 2024, digital kiosks were made available for inmates to file their grievances. (Hallman Decl. (dkt. #66) ¶ 2.)

Regardless of how submitted, Lieutenant Hallman and other correctional officers would first respond to grievances, while Captain Hendrickson was responsible for responding to any appeals. (*See, e.g.,* Dkt. #57-2, at 32.) In total, Hallman represents that Peters filed over 400 grievances while incarcerated at the Monroe County Jail. (Hallman Decl. (dkt. #66) ¶¶ 4-5.)

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the nonmoving party must provide evidence "on which the jury could reasonably find for the nonmoving party." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (cleaned up). Regardless, in reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000). While considering all materials in the record, Fed. R. Civ. P. 56(c)(3), the court has "'broad discretion' to relax or strictly enforce local rules governing summary judgment," "particularly … when the nonmovant is proceeding *pro se*." *Savis, Inc. v. Cardenas*, 528 F. Supp. 3d 868, 876 (N.D. Ill. 2021) (citing *Edgewood Manor Apt. Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013)).

I. **Plaintiff's Fourteenth Amendment Claim**

   A. **Each Officer's Liability**

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that someone deprived him of a right secured by the Constitution or the laws of the United States, and whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). While acting under Wisconsin law as correctional officers, plaintiff claims that Sergeant Schwanz violated his

due process rights by subjecting him to verbal harassment and encouraging other inmates to do the same or worse, while Lieutenant Hallman and Captain Hendrickson violated the Constitution by failing to intervene on his behalf.

Since plaintiff was a pretrial detainee at all times relevant to his action, the Fourteenth Amendment Due Process Clause applies to his conditions of confinement claim. *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015). Nonetheless, his claim is analyzed under the same lens as an Eighth Amendment claim for cruel and unusual punishment. *Id.* ("We have held that there is little practical difference, if any, between the standards applicable to pretrial detainees and convicted inmates when it comes to conditions of confinement claims, and that such claims brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment.") The Eighth Amendment's prohibition of cruel and unusual punishment protects prisoners from conditions of confinement that "involve the wanton and unnecessary infliction of pain," unconnected from any legitimate penological purpose. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

"Most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). However, verbal harassment is not categorically excluded from the Eighth Amendment's reach if sufficiently severe and repeated, particularly where the harassment generates a threat of serious violence. *See id.*, at 358-359; *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015); *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). In particular, verbal abuse using derogatory terms that suggest a detainee is homosexual may increase the likelihood of sexual assault from other inmates, and thus, can be an Eighth Amendment

9

violation. *See Beal,* 803 F.3d at 358-359; *Hughes*, 809 F.3d at 334. Nonetheless, "the test for what constitutes 'cruel and unusual punishment' is an objective one," determined by whether a 'reasonable' victim would fear assault based on the defendants' alleged conduct. *Dobbey*, 574 F.3d at 445. Finally, where a supervisor is personally involved in the conduct because he knew about it and had a realistic opportunity to intervene, but failed to do so, he also may be liable for constitutional violations under § 1983. *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

      Plaintiff moves for summary judgment, arguing that the harassment by Sergeant Schwanz, as well as the other defendants' failure to intervene, are sufficient to show a due process violation as a matter of law. However, since defendants dispute that any of the underlying conduct occurred, there is a genuine dispute of material fact, requiring denial of plaintiff's motion for summary judgment. Fed. R. Civ. P. 56(a). As for defendants' summary judgment motion, construing the record in the light most favorable to plaintiff and assuming the alleged conduct did occur, plaintiff has presented sufficient facts for a reasonable jury to find against all three defendants on plaintiff's Fourteenth Amendment claim.

      First, if credited, plaintiff's own testimony and contemporaneous grievances, as well as testimony from other inmates who state that they witnessed the conduct, are sufficient evidence for a reasonable jury to infer that Sergeant Schwanz repeatedly called plaintiff derogatory homophobic names and made sexual references about him in front of other detainees. Moreover, if repeated over time, a reasonable jury might well find that conduct to be sufficiently severe to make a reasonable inmate fear sexual assault from that officer

or other inmates. *See Beal,* 803 F.3d at 358-359; *Hughes,* 809 F.3d at 334. While the Eighth Amendment test requires an objective assessment, this conclusion is further bolstered by plaintiff's assertion that he was threatened with violence by other inmates, and was even assaulted on one occasion *because of* his perceived homosexuality.

Second, and again if credited, there is also sufficient evidence in the record from which a reasonable jury could infer that Lieutenant Hallman and Captain Hendrickson were personally involved in Schwanz's harassment by "turn[ing] a blind eye." *See Hildebrandt*, 347 F.3d at 1039 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995)). Indeed, plaintiff submitted no less than four grievances about Schwanz's behavior, to which he avers lieutenant Hallman merely responded by repeatedly telling him to have "thicker skin." (Peters Decl. (dkt. #57) ¶ 10.) Even after plaintiff and Captain Hendrickson met to discuss his appeal of his previous PREA complaints, he submitted two more grievances stating that the harassment was ongoing and specifically asking for help. (Dkt. #57-1, at 18, 30-31.)[2]

## B. Qualified Immunity

Alternatively, defendants argue that they are entitled to qualified immunity on plaintiff's due process claim. Qualified immunity protects a government official from civil

---

[2] The court understands that these grievances were filed amongst many others that plaintiff may have filed during this same period, which a reasonable jury *could* find adequately explains defendants Hallman's and Hendrickson's unwillingness to intervene further, as opposed to demonstrating they knew about Schwanz's ongoing harassment of plaintiff, had an opportunity to intervene, and failed to do so. *Hildebrandt*, 347 F.3d at 1039. Regardless, these are genuine disputes of material fact for the jury to decide, not for a court to grant summary judgment as to plaintiff's Fourteenth Amendment claims.

liability when a reasonable officer in his position would have known that his conduct does not violate a clearly established constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Constitutional rights are clearly established when existing precedent places the right at issue beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

At the time of Schwanz's alleged actions, it was already well established in this circuit that a correctional officer's sexual harassment can rise to the level of cruel and unusual punishment, at least if it could reasonably be viewed by an ordinary officer to increase the threat of sexual assault by another inmate. *See Beal,* 803 F.3d at 358-359; *Hughes*, 809 F.3d at 334. At the same time, a supervisor's liability for a subordinate's constitutional violations is clearly established upon proof of personal knowledge or at least reckless disregard of those unconstitutional acts and a failure to intervene. *See Hildebrandt*, 347 F.3d at 1039.

To determine whether a defendant's actions violated clearly established law, the court must again view the evidence at summary judgment in the light most favorable to the nonmovant and may not weigh evidence or resolve disputed issues in favor of the moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Further, the court should deny a motion for summary judgment based on qualified immunity when "the facts, taken in the light most favorable to the plaintiff, create a genuine dispute about whether the defendants' actions violated a clearly established constitutional right." *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017). In other words, "when the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without

a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Because the question of defendants' qualified immunity is so entangled with disputed material facts as to liability, the court must deny defendants' motion for summary judgment on this question as well until better resolved at trial. *Id.* Indeed, the entire course of conduct underlying plaintiff's due process claims is disputed by the parties, not only as to Lieutenant Hallman's and Captain Hendrickson's knowledge and opportunity to know and intervene as to Sergeant Schwanz's claimed misconduct, but as to the severity of that misconduct as well. Absent a fuller explication of the facts at trial, therefore, the court is unable to resolve any of defendants' entitlement to qualified immunity.

### C. Plaintiff's Claim for Compensatory Damages under the PLRA

Finally, defendants argue that plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act ("PLRA") and must be dismissed. The PLRA prohibits prisoners from recovering compensatory damages for "mental or emotional injury" in civil actions "without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). A physical injury alleged in a civil action need not be significant, but it must be more than negligible to satisfy this requirement. *Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023). In particular, § 1997e expressly bars recovery of compensatory damages for mental and emotional damages alone, although the statute does not apply to nominal or punitive damages for Eighth Amendment violations even if no physical injury can be proved. *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003).

Accordingly, plaintiff's Fourteenth Amendment claims must proceed to trial on the possible award of nominal or punitive damages. *Id.* Further, at least when viewed in the

13

light most favorable to plaintiff, the evidence raises a triable issue of fact as to his entitlement to compensatory damages as well as under § 1997e. *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Gray's summary judgment materials, we conclude, present triable issues of fact for a jury, which must determine the degree of both physical and psychological harm he suffered as a result of the [conditions of his confinement]. If the jury finds that Gray suffered only psychological harm, he will be limited to nominal and punitive damages.")  Here, plaintiff had testified that he suffered nausea, vomiting, insomnia, and panic attacks, and sought treatment from a mental health professional due to defendant Schwanz's harassment, the other defendants' inaction, and other inmate's verbal threats and, in at least one instance, physical attack.  Taken together, this testimony is sufficient to allege more than a negligible physical injury at this stage.  *See Hacker*, 62 F.4th at 1079.  Accordingly, defendants' motion for summary judgment on plaintiff's claim for compensatory damages will also be denied at summary judgment, although defendants may raise the issue again at the close of plaintiff's case.

## II. First Amendment Retaliation Claim

Plaintiff additionally claims that defendant Schwanz violated his First Amendment rights by retaliation after he filed a grievance for Schwanz allegedly harassing him.  To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*,

14

557 F.3d 541, 546 (7th Cir. 2009)). As to the *first* element, filing a grievance about conditions of confinement is an activity protected by the First Amendment. *See Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

As to the *second* element, plaintiff claims that Schwanz retaliated by preventing him from accessing medical care and taking a variety of disciplinary actions against him, including subjecting him to cell searches. Moreover, deliberately withholding medical care, performing a cell search, and taking disciplinary actions *could* be found by a reasonable jury to dissuade a person of ordinary firmness from exercising First Amendment activity. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020); *see Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Assuming that the second element is satisfied, plaintiff still must satisfy the *third* element by showing that his protected activity was a "motivating factor" for a retaliatory act. This requires plaintiff to demonstrate to the satisfaction of a reasonable jury that "a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. A defendant's knowledge of the plaintiff's grievance against him, without more, is insufficient to demonstrate a retaliatory motive. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). Likewise, the fact that disciplinary action takes place after the plaintiff files a complaint is insufficient to establish a causal inference. *See Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) ("as we have stated on many occasions, timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim.") Even then, defendants may provide a *legitimate* reason for their so-called retaliatory conduct, in which case a plaintiff has the further burden of providing "some evidence that

15

places their rationale in dispute." *Perkins v. Koehler*, No. 24-1508, 2024 WL 4835249, at *2 (7th Cir. Nov. 20, 2024).

Here, plaintiff's claim fails at this third element, because there is insufficient evidence in the record for a reasonable jury to conclude that plaintiff's First Amendment activity was a motive for defendant Schwanz's allegedly retaliatory acts. First, as to medical care, Schwanz shows that all decisions related to plaintiff's medical care were made *by medical staff* and only implemented by security staff. *See also Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, non-medical jail staff may trust the professionals to provide appropriate medical attention.") To rebut defendant's legitimate reason for his decisions relating to plaintiff's medical care, he merely asserts without more that actions of medical staff were undertaken with retaliatory motive after he filed his grievance. However, the fact that Schwanz knew about the grievance, and that he took actions that plaintiff perceived as adverse to him after the grievance was filed, is insufficient evidence on its own for a reasonable jury to find plaintiff's medical treatment (or lack thereof) was the product of defendants' retaliatory motive. *See Jones*, 27 F.4th at 1284; *Springer*, 518 F.3d at 485.

Second, as to the rest of the disciplinary actions taken against plaintiff, his retaliation claim also suffers from lack of evidence as to the third element. To begin, the only evidence of Schwanz's direct involvement in discipline against Peters is in a single instance. Moreover, as to that instance, Schwanz has sufficiently demonstrated that plaintiff's name-calling violated Jail policy, which requires respectful treatment of all correctional officers. (Dkt. #66-3, at 8; dkt. #57-2, at 30.) Thus, plaintiff bore the burden

16

to rebut a legitimate reason for defendant's initiating a disciplinary action. Unfortunately, plaintiff does not point to any evidence of a retaliatory motive except Schwanz's knowledge of the complaint and the timing of the discipline, which is insufficient on its own for a reasonable jury to decide for plaintiff on his claim. *Jones*, 27 F.4th at 1284; *Springer*, 518 F.3d at 485. Moreover, although this particular dispute resulted in changing plaintiff's phone PIN, plaintiff also offers no evidence to rebut the evidence that security officers changed his PIN briefly because of a planned housing move, which was quickly remedied after the move was cancelled. (Hallman Decl. (dkt. #66) ¶ 26.) For both reasons, plaintiff has failed to show sufficient evidence to find a retaliatory motive or injury.

Otherwise, Schwanz has definitively demonstrated that he had *no* direct involvement in any other instance of discipline against Peters while held in jail. As for plaintiff's claims that Schwanz "residually" affected other correctional officers' decisions to discipline him, including for over a year after his retirement, this amounts to no more than rank speculation, at least without any specific evidence that *Schwanz* somehow caused the retaliatory action. *See Manuel*, 966 F.3d at 680 (a First Amendment retaliation claim requires direct or indirect proof of defendant's involvement).

Finally, plaintiff alleges that defendant Schwanz retaliated by preventing him from filing additional grievances. However, the undisputed volume of grievances filed by plaintiff while at Monroe County Jail sufficiently defeats that allegation on its face, since it is highly unlikely that any jury, much less a reasonable jury, would find that he suffered a deprivation likely to thwart him or any ordinary inmates from engaging in future First Amendment activity. *Id.* Regardless, the only evidence of a retaliatory motive completely

17

overlaps with his basic claim that defendant Schwanz was out to get him. Since plaintiff will be allowed to proceed on that claim under the Eighth Amendment, there is no need to add an essentially redundant claim under the First. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims arising from same circumstances as free exercise claim because plaintiff "gains nothing by attaching additional constitutional labels.") Therefore, defendant Schwanz is entitled to summary judgment on plaintiff's First Amendment retaliation claim.

ORDER

IT IS ORDERED that:

1) Plaintiff's motion for summary judgment (dkt. #54) is DENIED.

2) Defendants' motion for summary judgment (dkt. #65) is DENIED as to plaintiff's Fourteenth Amendment claim.

3) Defendants' motion for summary judgment (dkt. #65) is GRANTED as to plaintiff's First Amendment claim.

4) As the pretrial deadlines and trial date have been struck, plaintiff's pretrial motions for subpoenas and to admit exhibits and witnesses (dkt. ##102-106) are DENIED without prejudice.

Entered this 15th day of December, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge